## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| GRACE AGYAPOMAA and EVANS ASARE,<br><br>*Plaintiffs*,<br><br>v.<br><br>ALEJANDRO MAYORKAS, et al.,<br><br>*Defendants*. | No. 3:21-cv-1499-MPS |

## RULING ON MOTION TO DISMISS

### I.    INTRODUCTION

Plaintiffs Evans Asare and Grace Agyapomaa claim that a decision by United States Citizenship Immigration Services ("USCIS") to revoke its approval of Asare's I-130 petition for Agyapomma based on a finding that they had not adequately proven their marriage and that Agyapomma had previously sought I-130 relief based on an earlier, fraudulent marriage (1) violated the Administrative Procedure Act ("APA") and (2) denied them due process in violation of the Fifth Amendment.  The Government has moved to dismiss both counts under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  I held oral argument on the motion on June 13, 2023.  Because I find that I lack subject matter jurisdiction to review USCIS's substantive revocation decision and that the Plaintiff's procedural challenge to the decision fails as a matter of law, I GRANT the motion to dismiss.

### II.    FACTUAL ALLEGATIONS

The following facts, which I accept as true for purposes of this ruling, are drawn from the Second Amended Complaint (ECF No. 20) and the documents attached to and incorporated by reference in that complaint.[1]

---

[1] *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated by reference." (quotation marks omitted)).

Grace Agyapomaa is a citizen of Ghana living in the United States.  Second Amended Complaint (ECF No. 20) ¶¶ 3, 4.  She entered the United States with a work-based visa in the healthcare industry in 2009.  *Id.*  In May 2012, Agyapomaa married a United States citizen, Kendall Marshall Marin.  *Id.* ¶ 7.

Shortly after Agyapomaa and Marin were married, Marin filed an I-130 petition to establish Agyapomaa as an immediate relative of a citizen.  ECF No. 20 ¶ 7.  On October 29, 2012, after Agyapomaa and Marin attended two interviews with USCIS officers, USCIS denied the I-130 petition because Marin had failed to sustain his burden of proof to establish eligibility for the immigration benefits sought.  *Id.*  Agyapomaa attempted to appeal the denial, but the Board of Immigration Appeals found that she lacked standing.  *Id.* ¶ 10.  In June 2013, she and Marin divorced because he was emotionally abusive to her.  *Id.* ¶ 8.

Agyapomaa married Asare on July 13, 2016.  ECF No. 20 ¶ 3.  Asare is a naturalized United States citizen and an active member of the United States military.  *Id.*  On December 5, 2016, Asare submitted an I-130 petition on behalf of Agyapomaa.  ECF No. 20 ¶ 4.  On August 7, 2017, "a USCIS officer determined that [Asare] had met his burden to demonstrate a bona fide marriage" and approved the petition.  *Id.* Subsequently, Agyapomaa submitted an I-485 to adjust her status "to that of a legal permanent resident based on her classification as an immediate relative of a citizen." *Id.* ¶ 5.  Agyapomaa and Asare were interviewed by a USCIS officer in December 2018.  *Id.*

On July 24, 2019, Agyapomaa and Asare received a Notice of Intent to Revoke (NOIR) the approval of the I-130.  ECF No. 20 ¶ 6.  The NOIR stated that USCIS intended to revoke the I-130 approval because Agyapomaa's first marriage, to Marin, was fraudulent and because Asare

had not met his burden of proof that his marriage to Agyapomaa was bona fide.  *Id.* ¶¶ 6, 12;
ECF No. 23-2.

The NOIR gave Asare thirty days to refute the allegations presented in the NOIR.  ECF
No. 20 ¶ 12.  Asare and Agyapomaa, without the assistance of counsel, submitted a timely
response to the NOIR in August 2019.  *Id.* ¶ 13.  On February 3, 2020, USCIS revoked the
approval of the I-130 petition, thereby renouncing Agyapomaa's classification as an immediate
relative of a U.S. citizen, Asare, based on the same two grounds set forth in the NOIR.  *Id.* ¶ 14.
Because of the fraud finding in particular, Agyapomma is barred from eligibility for adjustment
of status in the future, "without regard to her ties to the United States or the validity of her
current marriage relationship."  *Id.* ¶ 18.  USCIS's revocation decision "also renders
[Agyapomaa] wholly unable to leave the United States, forcing her to live separately from
[Asare] while he is deployed abroad on active duty with the U.S. Military instead of
accompanying him in his posts."  *Id.*

Asare and Agyapomaa obtained counsel and submitted a Notice of Appeal.  *Id.* ¶19.
With the assistance of counsel, Asare also submitted a second I-130 petition on Agyapomaa's
behalf, concurrently with an I-485 petition, and both remain pending.  *Id.* ¶ 20.  On August 26,
2021, the Board of Immigration Appeals (BIA) dismissed the appeal.  *Id.* ¶ 21.  The BIA found
that Agyapomaa's first marriage was entered into to evade immigration laws and affirmed the
USCIS Director's conclusion that "section 204(c) of the Act [i.e., 8 U.S.C. §1154(c)] . . . bar[s]
the approval of the visa petition filed by the petitioner on the beneficiary's behalf."  *Id.*  The BIA
also affirmed the revocation of the I-130 petition on the ground that Asare had failed to carry his
burden to prove a bona fide marriage with Agyapomaa.  *Id.*

Agyapomaa and Asare assert two claims.  In Count One, they allege that USCIS acted arbitrarily and capriciously and "without observance of procedure required by law" in violation of the APA, 5 U.S.C. § 706, by revoking its approval of the I-130 petition through an improper application of the "governing legal standard" to "the facts of this case." ECF No. 20 ¶ 30.  They further allege that while "certain aspects" of the revocation decision "are committed to the discretion of the Attorney General under 8 U.S.C. § 1155," other aspects, including the finding of marriage fraud, involve "nondiscretionary legal conclusion[s]" that are judicially reviewable. *Id.* ¶¶ 30, 32. In Count Two, Agyapomaa and Asare allege that USCIS's revocation decision deprived them of their "protected liberty interest in residing together as a married couple" and their "protected property interest in the fair adjudication of their marriage-based I-130 relative petition" in violation of the Fifth Amendment. *Id.* ¶ 37.  In particular, they allege that, especially in light of the harsh consequences of the bar that the marriage fraud finding entails, including preventing Agyapomaa from traveling outside the United States to be with her husband while he is on military deployment, they were "entitled to a more robust and fair legal review process," than the mere thirty days they received, without the assistance of counsel, to respond to the NOIR.  *Id.* at ¶¶ 38-40.

In their prayer for relief, the plaintiffs ask me to "[i]nvalidate USCIS's February 3, 2020 [revocation] decision and the [BIA's] August 26, 2021 order as being in violation of" the APA and to "[o]rder USCIS to reinstate the previously revoked I-130 petition on behalf of" Agyapomaa and grant her application for adjustment of status.  *Id.* at p. 18 (Prayer for Relief).

III.   **LEGAL STANDARDS**

A.   **Rule 12(b)(1)**

The Government has moved to dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* In adjudicating a motion to dismiss under Rule 12(b)(1), the court "accept[s] all of the plaintiff's factual allegations in the complaint as true and draw[s] inferences from those allegations in the light most favorable to the plaintiff." *Courtenay Communications Corp. v. Hall*, 334 F.3d 210, 213 (2d Cir. 2003).[2] In addition, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but ... may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (internal citations omitted).

---

[2] The Second Circuit has not always been clear on this point, stating, at times, that on a Rule 12(b)(1) motion, the court should not draw inferences in the pleader's favor. *Compare Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) ("When reviewing a district court's Rule 12(b)(1) determination of its subject matter jurisdiction, we review factual findings for clear error and legal conclusions de novo. Moreover, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." (internal quotations and citations omitted)) *with Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ("[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.") and *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) ("On appeal of the district court's order on the motion to dismiss [under Rule 12(b)(1)], we must accept as true all material factual allegations in the complaint, but we are not to draw inferences from the complaint favorable to plaintiffs."). In *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008), the court suggested that these different statements were reconcilable, although it did not explain how: "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff [on a Rule 12(b)(1) motion], "but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." " *Id.* at 170. In this ruling, I take as true the allegations in the second amended complaint and draw all reasonable inferences in the plaintiffs' favor.

**B. Rule 12(b)(6)**

The Government has also moved to dismiss count two of the second amended complaint under Fed. R. Civ. P. 12(b)(6). "To survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal citations omitted). The court must accept the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014).

**C. Immigration Law Provisions Governing I-130 Petitions**

U.S. immigration law permits a U.S. citizen to petition the government to classify a spouse as "an immediate relative." 8 U.S.C. § 1154(a)(1)(A)(i); 8 U.S.C. § 1151(b)(2)(A)(i). Thereafter, the government may, upon application, adjust the status of such an immediate relative "to that of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1255(a). The petition and application are referred to as an I-130 petition and I-485 application, respectively. ECF No. 20 ¶¶ 4-5. "The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under [8 U.S.C. § 1154]," including an I-130 petition. 8 U.S.C. § 1155.

**IV. DISCUSSION**

**A.    Rule 12(b)(1): Lack of Subject Matter Jurisdiction**

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action … is entitled to judicial review thereof," 5

U.S.C. § 702, unless a "statute[] preclude[s] judicial review" or "agency action is committed to agency discretion by law." *Id.* § 701(a); *see also Sharkey v. Quarantillo*, 541 F.3d 75, 84 (2d Cir. 2008) ("Although the APA does not itself confer subject matter jurisdiction, the Federal Question Statute, 28 U.S.C. § 1331, confers jurisdiction over a suit that arises under a right of action created by the APA ...." (internal citation omitted)). The Government argues that federal immigration statutes "preclude judicial review" of USCIS's decision to revoke its approval of the I-130 petition or commit that decision to the USCIS's discretion by law. The Government points first to 8 U.S.C. § 1252(a)(2)(B)(ii), which provides as follows:

> (2) Matters not subject to judicial review . . .
>
> (B) Denials of discretionary relief
>
> Notwithstanding any other provision of law (statutory or nonstatutory), ... and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review –
>
>> (i) any judgment regarding the granting of relief under [certain provisions of the immigration laws], or
>>
>> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security *the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security* ... .

8 U.S.C. § 1252(a)(2)(B) (emphasis added). According to the Government, the authority for the decision to revoke an I-130 petition "is specified [by statute] to be in the discretion of the ... Secretary of Homeland Security," 8 U.S.C. § 1252(a)(2)(B)(ii), because 8 U.S.C. § 1155, mentioned above, clothes that authority with discretionary language: The Secretary "*may*, at any time, *for what he deems to be good and sufficient cause*, revoke the approval" of an I-130 petition. 8 U.S.C. § 1155 (emphasis added). I agree with the Government that the italicized language in the previous sentence makes clear that Section 1155 is a statute "specif[ying]" that the authority for the decision to revoke an approval of an alien relative petition is "in the

discretion" of the Secretary, *see Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 346 (2005) ("The word 'may' customarily connotes discretion."); and, as the Government notes, the Second Circuit has interpreted the same italicized language in Section 1155 to mean that "the substance of the decision that there should be a revocation is committed to the discretion of the [Secretary]." *Nouritajer v. Jaddou*, 18 F.4th 85, 89 (2d Cir. 2021).

The plaintiffs acknowledge that 8 U.S.C. § 1252(a)(2)(B)(ii) "does undeniably place limits on the Court's review in the context of visa revocations," and in their complaint, they concede that "USCIS's factual determinations," including "the agency's decision to question the bona fides of [Agyapomma's] marriages, [its] weighing of the evidence and testimonial discrepancies, and [its] decision to issue a" NOIR, "fall within the discretion delegated to the Attorney General under 8 U.S.C. § 1155." ECF No. 26 at 65; ECF No. 20 ¶ 32. They argue, however, that I retain jurisdiction over "certain critical aspects of" their claims, including (1) USCIS's "non-discretionary," "legal conclusion that [Agyapomaa] committed marriage fraud," and (2) the "inadequa[cy]" of the "notice procedures afforded to Plaintiffs … under the unique circumstances of this case." ECF No. 26 at 5-6. I address these arguments below.

*1. Marriage Fraud and "Nondiscretionary Aspects" of the Revocation Decision*

The plaintiffs cite no Supreme Court or Second Circuit decisions suggesting that "aspects" or portions of the substance of a visa revocation decision that might be described as "legal" or "nondiscretionary" are judicially reviewable, and I am aware of none. As discussed below, while the Second Circuit has held that 8 U.S.C. § 1252(a)(2)(B)(ii) does not shield from judicial review "the *procedure* surrounding the substantive decision [to revoke the approval of a visa petition under 8 U.S.C. § 1155]," "particularly where the procedural requirements are codified in statute or in regulations," *Mantena v. Johnson*, 809 F.3d 721, 728-29 (2d Cir. 2015)

(emphasis in original), there is no binding authority that supports slicing the substantive

revocation decision into reviewable and non-reviewable pieces.

Furthermore, the Second Circuit's decision in *Nouritajer* appears to foreclose such

parsing. There, the court affirmed the district court's finding that it lacked jurisdiction to review

a decision revoking an I-140 alien worker visa obtained by a school on behalf of its employee.

Each of the claims brought by the school and the employee, the court of appeals found,

impermissibly sought to "challenge the agency's substantive discretionary discretion to revoke

Nouritajer's I-140." 18 F.4th at 88-89. Some of these claims would have fit the

"nondiscretionary" and "legal" labels the plaintiffs in this case apply to the marriage fraud

determination. For example, the *Nouritajer* plaintiffs argued that the denial of the appeal of the

revocation decision "was a non-discretionary eligibility determination on the merits that is

subject to judicial review." *Id*. at 90. In addition, they asserted that a requirement that an

employer sponsoring an alien worker "be able to pay" the worker's salary for a specified period

was "contrary to the [Immigration and Nationality Act]" and that USCIS was bound by its own

and another agency's prior decisions and was estopped from revoking the I-140. *Id*. Although

these arguments raised legal issues, the court found that they sought "to litigate the substantive

basis for USCIS's decision to revoke the I-140" and so fell outside the jurisdiction of the federal

courts under Section 1252(a)(2)(B)(ii). *Id*.

It is difficult to see how the reasoning in *Nouritajer* would permit me to reach a different

result in this case. A marriage fraud determination, which was one of two bases for the

substantive decision to revoke the approval of Agyapomaa's I-130 visa, *see* ECF No. 20-1 at 2-3

(BIA decision noting that USCIS "revoked the Form I-130 because [Asare] did not establish by a

preponderance of the evidence the bona fide nature of his marriage to the beneficiary" and

"because [Agyapomaa's] prior marriage ... was entered into for the purpose of evading the immigration laws"), is likely at least in part a non-discretionary conclusion when made in the denial of a visa petition under the statute governing marriage fraud, 8 U.S.C. § 1154(c). *See Chen v. Coven*, 672 Fed. Appx. 136, 137 (2d Cir. Jan. 13, 2017) (district court had jurisdiction over USCIS's denial of adjustment of status based on the latter's non-discretionary determination that plaintiff "made fraudulent or willful misrepresentations").  But equally non-discretionary were some of the agency's challenged conclusions in *Nouritajer*, such as the conclusion that a regulation requiring an employer sponsoring an alien worker to be able to pay the worker's salary conformed with the Immigration and Nationality Act.  The court nonetheless found this conclusion to be part of the unreviewable substantive revocation decision.  To be sure, *Nouritajer* addressed an I-140 visa rather than an I-130 visa, but the plaintiffs offer no reason this minor difference makes the case distinguishable, and both types of revocation decisions are authorized by the same discretion-conferring statute, 8 U.S.C. § 1155.

It is true that Second Circuit decisions addressing immigration agency rulings outside the context of visa revocations have sanctioned parsing those rulings to separate reviewable, non-discretionary components from non-reviewable, discretionary ones.   The most pertinent of these decisions is *Sharkey*, where, although the plaintiff conceded that USCIS's decision whether to grant her lawful permanent resident status was discretionary and non-reviewable, the court found that 8 U.S.C. § 1252(a)(2)(B) did not strip the district court of jurisdiction to review three related decisions: (1) whether the plaintiff's status had in fact been adjusted to that of a lawful permanent resident, (2) whether the agency was required to hold a hearing before rescinding the plaintiff's status, and (3) whether the agency had failed to provide the plaintiff with proof of her status.  541 F.3d at 82, 85-87.  Each of these determinations, the court held, was

"nondiscretionary" and so remained reviewable. *Sharkey* discussed both subclauses of Section 1252(a)(2)(B) – subclause (i) in the context of the issue whether the plaintiff's status was adjusted, 541 F.3d at 85-86, and both subclause (ii) and subclause (i) in the context of the issue whether the agency was required to hold a hearing. *Id*. at 86. (The court's discussion of the third issue – whether the agency was required to provide the plaintiff with proof of status – was very brief and did not reference either subclause. *Id*. at 87.) *Sharkey* did not, of course, involve a revocation decision. Further, its discussion of subclause (ii), the provision involved in this case, relied on earlier Second Circuit authority, since reaffirmed in *Mantena*, holding that the agency's failure to follow notice procedures required in a revocation proceeding was a reviewable, nondiscretionary action that fell outside the bar in Section 1252(a)(2)(B)(ii). *Sharkey*, 541 F.3d at 86 (relying on *Firstland Int'l, Inc. v. USCIS*, 377 F.3d 127 (2d Cir. 2004)(holding that USCIS's failure to follow notice requirements deprived revocation of effect, was not within the discretion of the agency, and fell outside the bar in subclause (ii))). Especially in light of *Nouritajer*, *Sharkey's* discussion of subclause (ii) is best understood as limited to the same proposition the Circuit adopted in *Mantena*, i.e., that the agency's compliance with the procedures surrounding the substantive revocation decision remains judicially reviewable. *See Mantena*, 809 F.3d at 729 (describing *Sharkey* as holding that "compliance with regulations establishing procedural requirements is 'not within the discretion of the Attorney General,' so the INA's jurisdiction-stripping provision does not apply" (quoting *Sharkey*)). I address the plaintiffs' arguments about procedure below.[3]

---

[3] I note that the Supreme Court's recent decision in *Patel v. Garland*, 142 S. Ct. 1614 (2022), raises questions as to whether *Sharkey's* discussion of subclause (i) remains good law. In *Patel*, the Supreme Court broadly construed that provision – which states that "no court shall have jurisdiction to review … any judgment regarding the granting of relief under [various INA provisions not implicated in this case]," 8 U.S.C. § 1252(a)(2)(B)(i) – to "preclude[] judicial review of factual findings that underlie a denial of relief." 142 S. Ct. at 1618; *see id*. at 1622 (§

There is another problem with the plaintiffs' argument that I may review the marriage fraud determination because it is nondiscretionary: that determination is only one of two bases for the challenged revocation decision. As to the other – Asare's failure to prove that he and Agyapomma have a bona fide marriage –, the plaintiffs make no argument in their brief that that determination is reviewable and conceded at oral argument that it is not.[4] And because it is not, I cannot grant them the relief they seek – invalidating the revocation decision and reinstating the revoked I-130 petition – because the revocation decision stands on an independent, unreviewable ground (subject to the discussion of procedural issues below), even if the plaintiffs are correct that the marriage fraud determination would be reviewable on its own.

The existence of a second, independent ground for revocation in this case also saps some of the force from the plaintiffs' next argument, which urges me to follow a Sixth Circuit decision, *Jomaa v. United States*, 940 F.3d 291 (6th Cir. 2019), in which the court held that 8 U.S.C. § 1252(a)(2)(B)(ii) did not oust the district court of jurisdiction to review the revocation of the approval of a visa petition based *solely* on marriage fraud. In *Jomaa*, the court noted that the denial of an I-130 petition in the first instance was judicially reviewable, because the statute

---

1252(a)(2)(B)(i) "encompasses not just "the granting of relief " but also any judgment *relating to* the granting of relief. That plainly includes factual findings."). The Supreme court drew no distinction between discretionary and non-discretionary factual findings. This appears to conflict with *Sharkey*, which rested in part on the notion that subclause (i) "preclud[es] reviews … *only* of a judgment denying a request for adjustment of status [or, apparently, denying the other types of relief mentioned in subclause (i)]," 541 F.3d at 85 (emphasis added), rather than the underlying, non-discretionary factual and legal determinations. But I need not and do not decide whether and to what extent *Sharkey* remains good law.

[4] Further, the plaintiffs acknowledge in their complaint that factual determinations are unreviewable under the jurisdiction-stripping statute, see ECF No. 20 ¶ 32, and whether Asare met his burden of proving by a preponderance of the evidence that his marriage to Agyapomma was bona fide – a disputed issue before the USCIS - is a factual determination. *See, e.g.*, *Friedman v. C.I.R.*, 216 F.3d 537, 542 (6th Cir. 2000)(courts "view[] the issue of whether a party presented evidence sufficient to meet its burden of proof as a question of fact."); *U.S. v. Capital Tax Corp.*, 2011 Wl 589615 *7 (N.D. Ill. Feb. 10, 2011) ("Whether that circumstantial evidence will satisfy [the plaintiff's] burden of proof is a question for the ultimate factfinder."); *see also see Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068 (2020) (holding that "questions of law" in 8 U.S.C. § 1252(a)(2)(D) – which preserves the jurisdiction of courts of appeal to review "constitutional claims or questions of law" – encompasses "the application of a legal standard to *undisputed or established* facts" (emphasis added)).

governing marriage fraud determinations contained non-discretionary language. *See* 8 U.S.C. §
1154(c) ("no petition *shall* be approved if … the alien has previously been accorded, or has
sought to be accorded, an immediate relative … status as the spouse of a citizen of the United
States … by reason of a marriage determined by the Attorney General to have been entered into
for the purpose of evading the immigration laws." (emphasis added)). So, the *Jomaa* court
reasoned, a revocation decision that was based on marriage fraud should be judicially reviewable
too, at least where, as in that case, USCIS's revocation decision "was primarily based on §
1154(c)": "If we were to hold this act of error correction [i.e., the revocation] discretionary,
USCIS could evade judicial review by granting a visa petition it should have denied outright and
then immediately revoking it." *Jomaa*, 940 F.3d at 295-296. Adopting the Sixth Circuit's logic,
the plaintiffs argue that "[i]t defies reason that USCIS would be able to wholly avoid judicial
accountability by first approving an I-130 petition under 1154(b) and then revoking that same
petition in its broad and unreviewable 'discretion' under 8 U.S.C. § 1155, when the exact same
reasoning would be subjected to judicial review had USCIS denied the I-130 petition in the first
place." ECF No. 26 at 11. The plaintiffs also point out that the Second Circuit has held that a
district court has jurisdiction "to entertain a petition for review of the denial of an I-130 petition"
in the first instance. *Ruiz v. Mukasey*, 552 F.3d 269, 271 (2d Cir. 2009); (ECF No. 26 at 11).

The Sixth Circuit's comment about USCIS's "evad[ing]" judicial review does not
persuade me. First, at least in this case, it leaves no room for the statutory prohibition against
reviewing discretionary decisions to operate. The conclusion that Asare failed to meet his
burden to prove his marriage to Agyapomma – which the plaintiffs concede is not reviewable in
this action – would be judicially reviewable in the appeal of a denial of a visa petition, just as the
marriage fraud determination would be. *See Ruiz*, 552 F.3d at 275-76 (finding that none of the

13

determinations made under 8 U.S.C. § 1154(b), including the determination "whether the facts alleged in a petition are true," are discretionary and thus all such determinations remain reviewable in a challenge to the denial of an I-130 petition). And so if it were applied here, the Sixth Circuit's reasoning would make all of the substantive revocation decision reviewable, which runs contrary to the plaintiffs' concessions and the plain language of 8 U.S.C. § 1252(a)(2)(B)(ii) and 8 U.S.C. § 1155.

Second, the Sixth Circuit's comment apparently did not move the Second Circuit in *Nouritajer*, which likewise involved determinations that would have been reviewable in a proceeding challenging the denial of the I-140 visa in the first instance. *See, e.g., Ren v. USCIS*, 60 F.4th 89 (4th Cir. 2023) (affirming on merits district court's denial of I-140 petition in action brought under APA). I am, of course, bound to follow precedent of the Second Circuit, not the Sixth.

Third, to the extent the Sixth Circuit or the plaintiffs are suggesting that USCIS will seek to manipulate the visa process by initially granting visas and then revoking them for the purpose of insulating its actions from judicial review, this suggestion runs contrary to the presumption of regularity and good faith courts generally accord agency action. *See, e.g., U.S. Post Service v. Gregory*, 534 U.S. 1, 10 (2001) ("[W]e note that a presumption of regularity attaches to the actions of Government agencies"); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 316) ("[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties."), *aff'd on other grounds Sossamon v. Texas*, 563 U.S. 277 (2011). The plaintiffs have not made any factual allegations suggesting that USCIS did not act in good faith in this case.

Finally, I note that other courts, too, have found visa revocation decisions to be unreviewable while acknowledging that the underlying determinations would be reviewable in a challenge to a visa denial. *See El-Khader v. Monica*, 366 F.3d 562 (7th Cir. 2004) (8 U.S.C. § 1252(a)(2)(B)(ii) precluded district court from exercising jurisdiction over revocation of I-140 visa based on finding of earlier marriage fraud; noting that "the fact that the INS is required to deny petitions to those who have committed marriage fraud for immigration purposes in no way limits the discretionary status of the Attorney General's subsequent revocation under [Section] 1155 of a granted petition that, it turns out, should have never been made in the first instance."); *Green v. Napolitano*, 627 F.3d 1341, 1347 (10th Cir. 2010) (finding visa revocations under Section 1155 to be discretionary and unreviewable under Section 1252(a)(2)(B)(ii) and noting that court decisions "concluding that § 1252(a)(2)(B)(ii) does not bar jurisdiction to review marriage-validity determinations for purposes of granting an immigrant petition under [Section 1154] concern statutes other than [Section] 1155. Accordingly, they do not bear on the issue before us." (internal citation omitted)). I conclude that I lack jurisdiction to review any aspect of the substantive revocation decision, including the marriage-fraud determination.

### 2. *Procedure Surrounding the Revocation Decision*

As noted above, the plaintiffs also argue that "notice procedures [surrounding the revocation decision] afforded to plaintiffs were inadequate under the unique circumstances of this case." ECF No. 26 at 5-6. In doing so, they seek to invoke an exception to the jurisdictional bar in Section 1252(a)(2)(B)(ii) recognized by the Second Circuit in *Mantena* for challenges to "the *procedure* surrounding the substantive decision [to revoke the approval of a visa petition under 8 U.S.C. § 1155]," "particularly where the procedural requirements are codified in statute or in regulations." *Mantena*, 809 F.3d at 728-29 (emphasis in original). In *Mantena*, USCIS

revoked an I-140 visa due to an adjudication of fraud against the worker's former employer (not specifically tied to the worker) but failed to give notice to the worker of the revocation and also failed, the worker contended, to give the former employer proper notice.  The Second Circuit concluded that "the district court had jurisdiction to determine whether USCIS complied with those procedural requirements, including notice, that were mandated before it could revoke Mantena's employer's I-140 petition." *Id.* at 730.

Although it is something of a close call, I agree with the plaintiffs that they have alleged a claim falling within the *Mantena* exception for procedural challenges to visa revocations.  It is true, as the Government notes, that the plaintiffs do not point to any violation of the language of the regulation setting forth the procedure for revocation decisions, 8 C.F.R. § 205.2.  Indeed, one of the Second Circuit's comments in *Nouritajer* about the attempt to invoke the "procedural" exception by the plaintiffs in that case aptly describe this case as well: "Plaintiffs do not dispute that they timely received USCIS's notice of intent to revoke the I-140, offered evidence in opposition to the notice of intent to revoke, and received a written notification of the decision explaining why the agency revoked approval of the petition," *Nouritajer*, 18 F.4[th] at 89 – all steps that the regulation requires.   Nonetheless, at oral argument, the plaintiffs made clear that their contention is that they did not receive an *adequate* "opportunity to offer evidence in support of the petition … and in opposition to the grounds alleged for revocation of approval," 8 C.F.R. § 205.2, one that took full account of their "unique circumstances," and they contended that the regulation should be read to require such an opportunity.  *See also* ECF No. 26 at 13.  This is consistent with their complaint, which alleges the following in Count Two (the due process claim):

> The procedural protections offered to Plaintiffs in reaching these consequential conclusions were essentially limited to a thirty-day response window to over ten

pages of allegedly material inconsistencies [specified in the NOIR], without the assistance of legal counsel.  The NOIR, addressed solely to Evans, digs up severely consequential concerns about a separate, abusive marriage that Grace was involved in years prior, affording Evans only 30 days to address those concerns alongside a separate list of concerns about his own marriage.  Although the bulk of the concerns involved Grace's ex-husband, Kendall, at no point during the revocation process was Grace permitted an opportunity to cross-examine Kendall as to the alleged inconsistencies.  At no point did Defendants offer an extension of the strikingly narrow response window for Notice of Intent to Revoke Plaintiffs' I-130 in consideration of Plaintiffs' *pro se* status.  At no point did Defendants directly allow Grace an opportunity to elaborate on her experiences of emotional abuse at the hands of her ex-husband Kendall, abuse which was allegedly ongoing during the course of her initial I-130 proceedings.  And at no point did Grace and Evans, while unrepresented, actually comprehend the legal significance of USCIS's allegations regarding Grace's prior marriage and the heavy consequence of a lifelong bar to adjustment of status that would accompany USCIS's fraud finding.

ECF No. 20 ¶ 39.  The plaintiffs also contended at oral argument that although the regulation expressly requires notice only to "the petitioner," 8 C.F.R. § 205.2(a), the USCIS should have notified Agyapomma, and not just Asare, of its intent to revoke.  *See also* ECF No. 20 ¶ 39 ("The NOIR, addressed solely to [Asare] ….").

Though not pinned to any language in the regulation, these alleged procedural flaws are similar to those the plaintiff asserted in *Mantena*.  As in this case, the governing regulation in *Mantena* did not provide for notice to the beneficiary of the petition (in that case the worker), and the plaintiff did "not identify a statute or regulation that explicitly supports her right to notice."  809 F.3d 729.  But this did not prevent her, the court found, from alleging a procedural challenge falling within the jurisdiction of the federal courts:

> First, … the plaintiff challenge[d] the sufficiency of the notice to [her former employer], a notice that is explicitly required by the regulation.  Moreover, and more important, a court cannot determine whether USCIS complied with the procedural requirements of the applicable regulations and statutes without determining what these statutes and regulations require.  And it is precisely a determination of what the relevant statutes and regulations mandate that [the plaintiff] seeks.

> It follows that, even if no notice requirements were ultimately found to exist, the district court would still have been wrong to dismiss the case for lack of subject matter jurisdiction. The proper course, under such circumstances, would be to find subject matter jurisdiction and then (as the government also argues) find that the plaintiff had no right to the asserted procedural safeguards, and, therefore, had provided no claim upon which relief could be granted.

*Id.* at 729-30.[5] In this case, too, the plaintiffs are alleging that the court should interpret the governing regulation (8 C.F.R. § 205.2), in spite of its language, to have required giving notice not just to Asare but to Agyapomma and to have required more time than the 30 days afforded for a response. On the latter point, although they acknowledge that the regulation does not specify a time period for the "opportunity to offer evidence" and that 30 days is the "standard" period USCIS affords in this context, the plaintiffs argue that a longer period was required because of their pro se status and the NOIR's reliance on a proposed finding of marriage fraud relating to a much earlier marriage to which Asare, the sole addressee of the NOIR, was not a party. Because I find that similar allegations, also not tied to the language of a particular procedural regulation, were sufficient to permit judicial review in *Mantena*, I conclude that I have jurisdiction to review the plaintiffs' procedural due process claim – the only part of the complaint that makes the procedural challenge described above – and proceed to consider the Government's Rule 12(b)(6) motion as to that claim.

## B.      Rule 12(b)(6): Due Process Claim under the Fifth Amendment

Asare and Agayapomaa argue that the revocation of the approved I-130 petition deprived them without adequate process of a liberty interest in residing together as a married couple and a property interest in the fair adjudication of their I-130 petition. ECF No. 20 ¶ 37. The

---

[5] The court went on to find, on the merits, that despite the language of the regulation, which required giving notice of intent to revoke only to the original employer, recent Congressional enactments concerning "portability" of work visas meant that "the regulation[] must be read to require notice to the real parties in interest," i.e., the worker and her current employer. *Id.* at 734.

Government argues that this claim fails as a matter of law because the factual allegations of the complaint do not suggest that the plaintiffs were deprived of a liberty interest or a property interest and, in any event, the plaintiffs received all the process that was due.  I agree with the Government.

The Fifth Amendment provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law."  The heading of Count Two of the complaint suggests that the plaintiffs intend to assert both a "substantive due process" claim and a "procedural due process" claim, *see* ECF No. 20 at 16, although the parties do not clearly distinguish between these claims in their briefs.  In any event, I will begin with the procedural due process claim.  "A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dept.*, 692 F.3d 202, 218.  The facts alleged in the complaint do not satisfy either element.  First, the plaintiffs have failed to allege a property interest because they have no entitlement to be free from USCIS's revoking of the petition.  "To have a property interest in a benefit, a person ... must ... have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).  As discussed above, the statute governing visa revocations, Section 1155, vests the decision whether or not to revoke a visa in the discretion of the government.  So the plaintiffs have no property interest here.

Nor have the plaintiffs alleged a liberty interest.  The asserted "liberty interest" appears to rest on the plaintiffs' "interest in residing together as a married couple," and so arguably invokes the fundamental right to marriage, *Obergefell v. Hodges*, 576 U.S. 644, 664 (2015) ("[T]he right

to marry is fundamental under the Due Process Clause.").  Because substantive due process

involves government infringement on fundamental rights, I take the parties' discussion in their

briefs of this aspect of the plaintiffs' claim to be their substantive due process analysis (as well

as, apparently, their procedural due process analysis as to the asserted liberty interest).  *See Goe*

*v. Zucker*, 43 F.4[th] 19, 30 (2d Cir. 2022) ("To determine whether a government regulation

infringes a substantive due process right, we first determine whether the asserted right is

fundamental," that is, "implicit in the concept of ordered liberty, or deeply rooted in this Nation's

history and tradition." (internal quotation marks omitted)).  The problem for the plaintiffs is that

the revocation decision in this case did not infringe their right to be, or to remain, married.  Nor

did it infringe upon any right of a married couple to live together.  They claim that it will be

impossible for them to live together if Asare, a U.S. military service member, is deployed abroad

and Agyapomaa does not have status that would allow her to return to the United States if she

were to follow him abroad.  *Id.* ¶ 38.  But this is a function of Asare's choice to remain in the

U.S. military (to the extent that that choice *requires* him to live abroad, which is not alleged) and

not a necessary result of the revocation decision.  In any event, the plaintiffs cite no authority for

the proposition that a U.S. citizen has a fundamental right to have his noncitizen family members

reside with him in the United States, and a plurality of the Supreme Court has rejected this

notion.  *See Kerry v. Din,* 576 U.S. 86, 95, 101 (2015) (plurality op.) ("Nothing in the cases

[plaintiff] cites establishes a free-floating and categorical liberty interest in marriage … sufficient

to trigger constitutional protection whenever a regulation in any way touches upon an aspect of

the marital relationship…. The Government has not refused to recognize [plaintiff U.S. citizen's]

marriage to [non-citizen living abroad], and [plaintiff] remains free to live with her husband

anywhere in the world that both individuals are permitted to reside."); *see also Burrafato v. U.S.*

*Dept. of State*, 523 F.2d 554, 557 (2d Cir. 1975) (consular denial of alien husband's visa application violated no constitutional right of U.S. citizen wife).  So the facts alleged do not support a liberty interest - fundamental or otherwise.

The due process claim also fails to plausibly allege that the plaintiffs did not receive all the process they were due.  As the Government points out and as discussed above, USCIS committed no facial violations of the procedural regulation governing revocations, sending the NOIR to Asare, the petitioner, and giving him 30 days to offer evidence in response.  While the plaintiffs contend that this period was inadequate because the plaintiffs were not represented by counsel and the NOIR made allegations about a much earlier marriage to which Asare was not a party, the plaintiffs acknowledged at oral argument that 30 days is the "standard" period USCIS affords in the revocation context and they do not dispute that Asare submitted a detailed response to the NOIR, setting forth evidence and argument about both his marriage to Agyapomaa and her earlier marriage.  They also acknowledged that, although the NOIR was not addressed to Agyapomma, she was living with Asare when he received it and she contributed to the response. In other words, she had actual notice of its contents.  Further, as the Government points out, the plaintiffs do not allege, and the attachments to the complaint do not suggest, that the plaintiffs requested more time to submit their response to the NOIR or sought to find counsel to assist them before they submitted their response.  Finally, as the Government also notes, even after the plaintiffs retained counsel for their appeal to the BIA, counsel made no argument to the BIA that the plaintiffs should have received more time or that the USCIS committed any other procedural violations – a telling omission.

Under these circumstances, the plaintiffs' claim of procedural violations fails on the merits because the plaintiffs received all the process they were due.  The measure of how much

process is due is governed by *Matthews v. Eldridge*, 424 U.S. 319 (1976), which requires courts

to consider three factors:

> First, the private interest that will be affected by the official action; second, the
> risk of an erroneous deprivation of such interest through the procedures used, and
> the probable value, if any, of additional or substitute procedural safeguards; and
> finally, the Government's interest, including the function involved and the fiscal
> and administrative burdens that the additional or substitute procedural
> requirement would entail.

424 U.S. 319, 335 (1976).

The plaintiffs offer no *Matthews* analysis in their brief, and in any event I find that the

*Mathews* factors weigh against them. The private interest at stake – the plaintiffs' interest in

Agyapomma's retaining her I-130 status – is significant because it will make her status in this

country more uncertain and prevents her from returning to the United States if she travels abroad.

But the risk of an erroneous deprivation through the procedures used – including notice that was

actually received, an opportunity to submit evidence that was actually exercised, and an appeal

that was actually taken – do not raise a material risk of an erroneous deprivation. Although the

plaintiffs claim they should have been allowed to "cross-examine" Agyapomma's previous

husband before USCIS made a determination of marriage fraud, they cite no precedent for such a

right and do not explain why cross-examination in this particular case would have significantly

reduced the risk of erroneous deprivation beyond what was ensured by Agyapomma's own

opportunity to explain why the marriage was not fraudulent (which, as noted, she received here

even though the NOIR was not addressed to her). Nor is there any suggestion that the plaintiffs

requested a right to cross-examine before the USCIS or complained about their inability to cross-

examine in their appeal to the BIA – also signs that, at the time, neither they nor their counsel

(for the BIA appeal) regarded cross-examination as critical to a fair outcome. Finally, adding a

cross-examination requirement would obviously impose a significant additional administrative burden on the Government, which would need to schedule hearings in all proceedings resembling this one; the same is true of any requirement that the USCIS provide counsel in the context of a revocation proceeding.  And while affording more time likely would not have imposed much additional burden, the plaintiffs here did not request additional time, and requiring the USCIS to grant additional time *sua sponte* in particular cases where the circumstances are "unique," as the plaintiffs allege here, would impose a burden on USCIS, which would be required to make an additional determination about which cases are "unique."

And turning again to the substantive due process claim, I find that the plaintiffs have also failed to allege any shocking or egregious conduct – a requirement for any substantive due process claim, *Goe*, 43 F.4th at 30 (noting that, in assessing a substantive due process claim, "we first identify the constitutional right at stake …" and "then assess whether the government's alleged conduct shocks the conscience.").  *See also Anthony v. City of New York*, 339 F.3d 129, 143 (2d Cir. 2003) (substantive due process claim requires government conduct that is "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.") (internal quotation marks omitted); *see also Okin v. Village Cornwall-On-Hudson Police Dept.*, 577 F.3d 415, 431 (2d Cir. 2009) ("To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.").  As shown, the complaint – and the documents attached to it – largely shows that USCIS followed its usual procedures in revoking Agyapomma's I-130.  There are no allegations that approach the "shocks the conscience" standard.

In short, I find that the due process claim fails as a matter of law and so I grant the Government's motion to dismiss that claim under Rule 12(b)(6).

## V.      CONCLUSION

Because the APA claim does not assert any procedural violations, I lack jurisdiction to adjudicate it and so dismiss it without prejudice under Rule 12(b)(1).[6]  Because the due process claim fails as a matter of law, I dismiss it with prejudice under Rule 12(b)(6).  I note that nothing in this ruling should be read to suggest that the plaintiffs may not pursue their pending I-130 petition or that USCIS should deny that petition.   I further note that the Government agreed at oral argument that it would not take the position – if any denial of the pending I-130 petition is appealed to this Court – that the revocation decision involved in the proceeding before me now has any preclusive effect in this Court.  The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: Hartford, Connecticut
June 27, 2023

_____
/s/
Michael P. Shea, U.S.D.J.

---

[6] Even if the APA claim did assert procedural violations, I would dismiss any procedural challenge on the merits under Rule 12(b)(6).  As shown, USCIS followed its "standard" procedure in this case and committed no facial violation of the regulation governing revocation decisions.  So its decision was in "observance of procedure required by law."  5 U.S.C. § 706.